# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF SOUTH CAROLINA

JAMES ARTHUR NESBITT,    )    CIVIL ACTION NO. 9:13-2980-MGL-BM
        #291377,    )
                    )
        Petitioner,    )
                    )
v.                    )    **REPORT AND RECOMMENDATION**
                    )
                    )
WARDEN, LEROY CARTLEDGE  )
                    )
        Respondent.    )
_____)

Petitioner, an inmate with the South Carolina Department of Corrections, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The petition was filed pro se on October 29, 2013.[1]

The Respondent filed a return and motion for summary judgment pursuant to Rule 56, Fed.R.Civ.P., on March 17, 2014. As the Petitioner is proceeding pro se, a Roseboro order was entered by the Court on March 18, 2014, advising Petitioner of the importance of a motion for summary judgment and of the necessity for him to file an adequate response. Petitioner was specifically advised that if he failed to respond adequately, the Respondent's motion may be granted, thereby ending his case.

On March 20, 2014, Respondent filed an amended memorandum in support of his motion for summary judgment, and after receiving extensions of time to respond, Petitioner filed a

---

[1]Filing date per Houston v. Lack, 487 U.S. 266, 270-276 (1988).



memorandum in opposition to summary judgment on June 11, 2014, and an amended response in opposition on July 1, 2014.  This matter is now before the Court for disposition.[2]

### Procedural History

Petitioner was indicted in the October 2007 term by the Spartanburg County Grand Jury for possession of cocaine [Indictment No. 07-GS-42-4467], possession with intent to distribute (PWID) heroin [Indictment No. 07-GS-42-4468], and two counts of distribution of heroin [Indictment Nos. 07-GS-42-4469, -4470].  (R.pp. 95-102).  Petitioner was represented by William H. McPherson, Esquire, and James A. Cheek, Esquire.  On January 7, 2008, Petitioner pled guilty, as indicted, and was sentenced to ten (10) years for possession of cocaine, twenty-two (22) years for PWID heroin, and twenty-two (22) years for each count of distribution of heroin, with all of the sentences running concurrent.  (R.pp. 1-26).

Petitioner did not appeal his plea and/or sentences.  However, he did file an Application for Post Conviction Relief ("APCR")  in state circuit court on November 25, 2008.  Nesbitt v. State of South Carolina, No. 2008-CP-42-6311.  (R.pp. 28-34).  Petitioner raised the following issues in his APCR:

**Ground One:**  Ineffective assistance of counsel;

**Supporting Grounds:** Failure to investigate all possible defenses; Failure to provide Applicant with the assessments of the State's case; and Denied Counsel during critical stages of the proceedings;

**Ground Two:** Involuntary guilty plea;

---

[2]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 19.02(B)(2)(c), D.S.C.  Respondent has filed a motion for summary judgment. As this is a dispositive motion, this Report and Recommendation is entered for review by the Court.



**Supporting Grounds:** [Counsel . . .p]ressured and coerced the Applicant; and [Counsel] failed to inform the Applicant of the amount of time he was facing.

**Ground Three:** "Seek grand jury file";

**Supporting Grounds:** Impanelment documents including the State's petition, supporting materials, and the impaneling Judge's order maybe release[d] to an applicant in a PCR proceeding.

(R.pp. 29-31).

Petitioner was represented in his APCR by Howard R. Kinard, Esquire, and an evidentiary hearing was held on January 13, 2010. (R.pp. 41-85). On February 9, 2010 (filed on February 10, 2010), the PCR Judge entered a written order denying Petitioner's APCR in its entirety. (R.pp. 86-94).

Petitioner appealed the denial of his APCR, and was represented in his appeal by LaNelle C. Durant, Appellate Defender with the South Carolina Commission on Indigent Defense, who filed a <u>Johnson</u>[3] petition seeking to be relieved and raising the following issue:

Did the PCR court err in failing to find plea counsel ineffective for not insuring that petitioner's guilty plea was knowingly, voluntarily and intelligently entered into?

<u>See</u> Johnson Petition, p. 2 [Court Docket No. 22-3, p. 3].

Petitioner then filed a *pro se* response to the <u>Johnson</u> petition dated November 18, 2010, raising the following additional issues:

**Ground One:** Did the PCR Court err on the basis for denying the Petitioner's open court motion for continuance?

**Ground Two:** Did the PCR Court err in failing to find plea counsel ineffective for not providing the Petitioner with all the assessments of the State's case?

---

[3]<u>Johnson v. State</u>, 364 S.E.2d 201 (S.C. 1998); <u>see also</u> <u>Anders v. California</u>,386 U.S. 738, 744 (1967).



**Ground Three:** Did the PCR Court err in failing to find plea counsel ineffective in his investigation?

<u>See</u> Petition, p. 1 [Court Docket No. 22-4, p. 2].

The South Carolina Court of Appeals denied certiorari on June 5, 2013. <u>See</u> <u>Nesbitt v. State</u>, No. 2010-155109, Order filed June 5, 2013. <u>See</u> Court Docket No. 22-5. The Remittitur was sent down on October 10, 2013. <u>See</u> Remittitur [Court Docket No. 22-6].

Petitioner then filed this federal habeas corpus petition, raising the following issue:

**Ground One**: "Ineffective Assistance of counsel" in violation of Sixth Amendment right under the U.S. Constitution.

**Supporting Facts**: The state courts Denied Relief on Petitioner's claims of counsel being 'Ineffective:

> 1)-By failing to Investigate, through filing Discovery Motion, the Identity of the Informant for development of a valid defense;
>
> 2)-By failing to ensure Petitioner entered a valid guilty plea after being apprised [of] all assessments of [the] State's case.

<u>See</u> Petition, p. 5.

On January 15, 2014, Petitioner filed an Amended Petition in which he raised five claims:

**Ground One:** The PCR court unreasonably applied the <u>Strickland</u>[4] test when it failed to find plea counsel ineffective in his investigation.

**Ground Two:** The South Carolina Court of Appeals erred in dismissing the Petitioner's *Johnson* petition without ruling on the Sixth Amendment violation.

**Ground Three:** The PCR court erred in failing to find plea counsel ineffective for not insuring that Petitioner's guilty plea was knowingly, voluntarily and intelligently entered into.

**Ground Four:** The PCR court [erred by] denying the Petitioner's open court motion for continuance.

---

[4]<u>Strickland v. Washington</u>, 466 U.S. 668 (1984)

4



**Ground Five:** PCR counsel was ineffective during the course of Petitioner's collateral attack on his guilty plea conviction and sentence, which is a denial of due process of law.[5]

<u>See</u> Amended Petition, pp. 6, 8-9, 11, Attachment, p. 23.

<u>Discussion</u>

Summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c), Fed.R.Civ.P; <u>see</u> Habeas Corpus Rules 5-7, 11. Further, while the federal court is charged with liberally construing pleadings filed by a <u>pro se</u> litigant to allow the development of a potentially meritorious case; <u>See</u> <u>Cruz v. Beto</u>, 405 U.S. 319 (1972), and <u>Haines v. Kerner</u>, 404 U.S. 519 (1972); the requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, nor can the court assume the existence of a genuine issue of material fact where none exists. <u>Weller v. Dep't of Social Services</u>, 901 F.2d 387 (4th Cir. 1990).

**I.**

In Ground One of the Petition, Petitioner raises the issue of ineffective assistance of counsel with respect to counsel's failure to further investigate after reviewing the videotape of the alleged drug deal. Petitioner contends that counsel should have, at a minimum, interviewed the confidential informant to determine whether he was a paid informant, was working off a charge, or was a citizen doing his civic duty, and that counsel should also have interviewed the agent(s) that

---

[5]In addressing the Petition, Respondent appears to have inadvertently left off Ground Five of Petitioner's Amended Petition. Although this claim was not listed as a Ground in the form part of the Petition, it was listed in the Attachment to the form. <u>See</u> Attachment to Petition, p. 23.



worked on the case allegedly involving the Petitioner and the drugs.  In Ground Three, Petitioner contends that his counsel was ineffective for not insuring that Petitioner's guilty plea was knowingly, voluntarily, and intelligently entered.

Petitioner raised these issues in his APCR, where he had the burden of proving the allegations in his petition.  Butler v. State, 334 S.E.2d 813, 814 (S.C. 1985), cert. denied, 474 U.S. 1094 (1986).  The PCR court rejected these claims, making relevant findings of fact and conclusions of law in accordance with S.C.Code Ann. § 17-27-80 (1976), as amended.  See Nesbitt v. South Carolina, No. 08-CP-42-6311.  Specifically, the PCR judge found that: 1) prior to testimony being taken at the PCR hearing, Petitioner requested a continuance on the basis that he currently had an open post-conviction relief case in Greenville County and wanted to wait on the resolution of that case before pursuing the Spartanburg case; 2) the State objected on the basis that each case involved separate charges; 3) the PCR Court found there was no reason to continue this case and denied Petitioner's request; 4) the State recited Petitioner's previous criminal history; 5) Petitioner testified that he met with defense attorney Cheeks three times to discuss his case; 6) Petitioner testified that Cheeks tried to get Petitioner to plead guilty to eighteen (18) years because he was potentially facing life without parole, but Petitioner did not want to plead; 7) on cross-examination, Petitioner testified he knew quickly after being arrested that he was facing a minimum of fifteen (15) years; 8) Petitioner also testified that he received the plea offer of eighteen (18) years within twelve (12) hours after being arrested; 9) Petitioner testified that Cheek met with him at the jail, but stepped aside for attorney McPherson to represent him at trial when Petitioner chose not to plead; 10) Petitioner testified that McPherson showed him discovery, with the exception of the videotape evidence of the confidential informant sales; 11) Petitioner testified that counsel told him that counsel had seen the



videotape and that it was clear that it showed the Petitioner; 12) Petitioner testified that he agreed to plead guilty to the charges because he did not want to face life without parole; 13) Petitioner testified that he was not aware of the time he was facing if he pled guilty; 14) on cross-examination, Petitioner testified that he remembered saying he would plead guilty if he could plead to an "open" plea; 15) Petitioner also testified that he knew he could get anywhere from fifteen (15) to thirty (30) years on most of the charges, but he did not know that he could potentially face up to one hundred (100) years with an open plea; 16) Petitioner also testified that he knew if he did not plead, he was facing life without parole; 17) Petitioner testified that Cheek told him that the judge would probably give Petitioner fifteen (15) years; 18) Petitioner also testified that when you plead guilty, you are coached to say certain things; 19) however, Petitioner acknowledged that he did agree with the facts as read by the Solicitor at the time of the plea; 20) Petitioner also acknowledged that the judge went over the potential sentences he was facing on each charge at the time of the plea; 21) Cheeks testified to his extensive experience as a criminal defense attorney; 22) Cheeks testified that it was the policy of the public defender's office to appoint an attorney for a client when the State was moving for bond at the magistrate level, simply to represent the client at the bond hearing; 23) Cheeks testified that he did not remember discussing a plea offer with the Petitioner at their first meeting; 24) however, Cheeks testified that he did meet with the Solicitor regarding plea negotiations after the first meeting with the Petitioner; 25) Cheeks also testified that at that time, he advised Petitioner to wait to have a bond hearing until Petitioner could go before a circuit court judge because Petitioner had previously been denied bond at the magistrate level; 26) Cheeks testified that the Solicitor's Office offered an eighteen (18) year sentence for Petitioner if he plead guilty, which counsel communicated to Petitioner; 27) Petitioner informed counsel that he was not interested in pleading guilty at that time;



28) Cheeks testified that he then told Petitioner that the public defender who would be representing the Petitioner at trial would be in touch; 29) Cheeks also testified that he discussed the charges and potential sentences with Petitioner and advised Petitioner that he would most likely receive a notice of life without parole if he chose to proceed to trial; 30) Cheeks testified that he went to see the videotape evidence and it was clear that the Petitioner was on the tape; 31) Cheeks also testified that he described the interior of the house shown on the videotape to Petitioner, which included clothes, trophies, and plaques, which were clearly inside the Petitioner's home; 32) Cheeks then testified that he went to see the Solicitor and asked if they would hold off on noticing the Petitioner that they would seek life without parole until he could discuss the plea again with him; 33) Cheeks testified that once he described the videotape evidence to the Petitioner, the Petitioner decided to accept the negotiated eighteen (18) year plea offer; 34) however, Cheeks testified that the day before the plea, Petitioner rescinded his agreement to enter the negotiated plea and wanted to plead straight up; 35) Cheeks testified that he did not tell the Petitioner that he would receive fifteen (15) years; 36) in fact, Cheeks testified that he told Petitioner that a twenty (20) year sentence would be good in light of what the Petitioner was facing; 37) on cross examination, Cheeks testified that he felt there was no need to investigate further once he reviewed the videotape evidence because the quality of the tape was excellent; 38) Cheeks also testified that the videotape clearly gave probable cause for a search warrant; 39) Cheeks testified that Petitioner did request to see the tape, but he informed Petitioner that Petitioner could not view the tape until right before trial since the undercover officer and confidential informant were still working for law enforcement and could not be compromised; 40) Cheeks also testified that Petitioner never said he wanted to go to trial; 41) Cheeks' testimony was more credible than Petitioner's; 42) in regards to the allegations that counsel failed to properly confer



and investigate, the Court found no factual basis to these claims; 43) plea counsel was an experienced criminal trial practitioner; 44) plea counsel presented persuasive, compelling, and credible testimony at the PCR hearing; 45) counsel conducted sufficient conferences with Petitioner during which counsel discussed the nature of the charges, potential penalties, Petitioner's version of the facts, possible defenses, and defense strategies; 46) counsel also received all discovery material, fully investigated the case and was aware of the evidence the State would present against Petitioner at trial and discussed these matters with Petitioner; 47) moreover, Petitioner failed to provide any testimony, evidence or information he believed could have been used in his favor had counsel conducted additional conferences or investigation; 48) regarding the allegation that his guilty plea was unknowing and involuntary, Petitioner completely lacked credibility respecting this claim; 49) the record reflected that the plea was entered voluntarily, knowingly, and intelligently; 50) Petitioner was made aware of his right to a jury trial and rights pertinent thereto as well as the fact that the guilty plea would waive those rights; 51) Petitioner was aware of the nature of the offenses, the proper applicable penalties, and the options available to him when he appeared in court to enter the guilty plea; 52) counsel did not improperly pressure or threaten petitioner in counsel's discussion about the guilty plea; 53) counsel was prepared for trial and provided Petitioner with counsel's assessment of the strength of the State's case and possible outcome at trial; 54) the testimony offered at the evidentiary hearing and the guilty plea colloquy clearly established that Petitioner knowingly and intelligently pled guilty based upon the effective assistance of trial counsel; 55) counsel adequately conferred with the Petitioner, adequately sought and discussed plea options, was thoroughly competent in his representations, and plea counsel's conduct did not fall below the objective standard of reasonableness; 56) the record in this case fully demonstrated that the Petitioner understood the



nature of his plea, and that his plea was made freely and voluntarily after being made aware of the sentencing possibilities; 57) Petitioner failed to prove the first prong of the <u>Strickland</u> test and failed to present specific and compelling evidence that trial counsel committed either errors or omissions in his representation of the Petitioner; 58) as to any and all allegations, where were or could have been raised in the application or at the hearing in this matter, but were not specifically addressed in this order, Petitioner failed to present any probative evidence regarding such allegations; 59) these allegations were not supported by any law and were not addressed at the hearing; and 60) the Petitioner waived the allegations and failed to meet his burden of proof regarding them.  (R.pp. 87-93).

Substantial deference is to be given to the state court's findings of fact.  <u>Evans v. Smith</u>, 220 F.3d 306, 311-312 (4th Cir. 2000), <u>cert. denied</u>, 532 U.S. 925 (2001) ["We . . . accord state court factual findings a presumption of correctness that can be rebutted only by clear and convincing evidence], <u>cert. denied</u>, 532 U.S. 925 (2001); <u>Bell v. Jarvis</u>, 236 F.3d 149 (4th Cir. 2000)(en banc), <u>cert. denied</u>, 112 S.Ct. 74 (2001).

> In a proceeding instituted by an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court, a determination of a factual issue made by a State court shall be presumed correct.  The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.

28 U.S.C. § 2254(e)(1).  <u>See also</u> <u>Fisher v. Lee</u>, 215 F.3d 438, 446 (4th Cir. 2000), <u>cert. denied</u>, 531 U.S. 1095 (2001); <u>Frye v. Lee</u>, 235 F.3d 897, 900 (4th Cir. 2000), <u>cert. denied</u>, 533 U.S. 960 (2001).

However, although the state court findings as to historical facts are presumed correct under 28 U.S.C. § 2254(e)(1), where the ultimate issue is a mixed question of law and fact, as is the issue of ineffective assistance of counsel, a federal court must reach an independent conclusion. <u>Strickland</u>, 466 U.S. at 698; <u>Pruett v. Thompson</u>, 996 F.2d 1560, 1568 (4th Cir. 1993), <u>cert. denied</u>,



114 S.Ct. 487 (1993) (citing Clozza v. Murray, 913 F.2d. 1092, 1100 (4th Cir. 1990), cert. denied, 499 U.S. 913 (1991)).  Nevertheless, since these ineffective assistance of counsel claims were adjudicated on the merits by the South Carolina state court, this Court's review is limited by the deferential standard of review set forth in 28 U.S.C. §2254(d), as interpreted by the Supreme Court in Williams v. Taylor, 120 S.Ct. 1495 (2000).  Bell v. Jarvis, supra; see also Evans, 220 F.3d at 312 [Under § 2254(d)(1) and (2), federal habeas relief will be granted with respect to a claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States", or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding"].  Therefore, this Court must be mindful of this deferential standard of review in considering Petitioner's ineffective assistance of counsel claims.

Where allegations of ineffective assistance of counsel are made, the question becomes "whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." Strickland, 466 U.S. at 694.  In Strickland, the Supreme Court articulated a two prong test to use in determining whether counsel was constitutionally ineffective.  First, the Petitioner must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel's performance was below the objective standard of reasonableness guaranteed by the Sixth Amendment.  Second, the Petitioner must show that counsel's deficient performance prejudiced the defense such that the Petitioner was deprived of a fair trial.  Further, where a guilty plea is involved, in order to show prejudice a Petitioner must show that there is a reasonable probability that, but for counsel's errors, he would not

11



have pled guilty and would have insisted on going to trial. Hill v. Lockhart, 474 U.S. 52 (1985).

Here, after careful review of the record and the arguments presented, the undersigned finds and concludes that Petitioner has failed to meet his burden of showing that trial counsel was ineffective under this standard, or that his plea was unknowing or involuntary. Smith v. North Carolina, 528 F.2d 807, 809 (4th Cir. 1975) [Petitioner bears the burden of proving his allegations when seeking a writ of habeas corpus].

Petitioner claimed at the PCR hearing that Cheeks told him that the Solicitor offered him eighteen years to plead or he would be facing life without parole, and that he told Cheeks that he was not going to plead to eighteen (18) years. (R.pp. 51-52). Petitioner also testified that he wanted to see the video, but that although his counsel had viewed it and said that it was clear, counsel did not bring it for him to view. (R.pp. 53-54). Petitioner further testified that he was brought into court in December 2007 and told that if he didn't plead, that the State was going to serve him with life without parole notice, and that while he told them he didn't want to plead then, he would plead in the beginning of the year. (R.pp. 54-55). Petitioner also testified that he agreed to plead guilty, but not to the negotiated plea of eighteen (18) years. Cheeks had told him that if he pled to the eighteen (18) years, he would try to get him in front of Judge Hayes, who might give him fifteen (15) years. However, Petitioner testified that if he pled to the negotiated plea, he couldn't get fifteen (15) years, but thought that if he pled without a deal, that he would get fifteen (15) years, and that when he did the open plea he had no idea that he could have gotten over a hundred years. (R.pp. 55-57). Petitioner testified that if he had known that then, he would have probably taken the negotiated plea. (R.p. 57). Petitioner also said that his counsel didn't talk to any investigators and that the only thing they did was a motion for discovery. (R.p. 58).



However, the record reflects that at the plea hearing Petitioner acknowledged he was satisfied with the work his lawyer did, that he had not been threatened in any way or promised anything in order to enter his plea, and that he made the decision freely and voluntarily to enter his plea. (R.pp. 6-7). The plea judge also explained Petitioner's rights to him, including the right to a trial by jury, that Petitioner had a right to confront and cross examine the State's witnesses, that Petitioner had a right to remain silent, and that Petitioner was waiving those rights by pleading guilty. (R.pp. 7-8). Petitioner acknowledged that he understood that he was giving up those rights, that he wanted to plead guilty, and that he was giving up his right to a jury trial. (R.p. 8). Petitioner also testified that he had had enough time to talk with his attorney in regards to any defenses he may have, about the facts that were behind the indictments, and about the legal elements of the offense to which he was charged. (R.p. 13). After the Solicitor then recited the charges and relevant facts surrounding the charges, and the possible penalties were discussed, Petitioner affirmed that he understood the consequences and ramifications of the charges including those being classified as violent and serious and the potential sentences, and that he still wanted to proceed with his guilty plea. (R.pp. 14-17). Petitioner then affirmed to the plea judge that he had heard all of the questions that the judge had asked him and that he had answered them truthfully. (R.p. 17).

For his part, Cheeks testified at the PCR proceeding that he had over thirty (30) years experience and that his job at the Public Defender's office was to represent defendants at bond hearings, particularly those held at the Spartanburg County Detention Center and to do guilty pleas. (R.pp. 69-70). Cheeks testified that after his first meeting with the Petitioner, he contacted the Solicitor's office and they made an offer of eighteen (18) years if Petitioner would plead guilty. (R.p. 71). Cheeks testified that he recommended that Petitioner take the plea and explained to Petitioner



that the State would most probably be moving forward with serving him with a life without parole notice, but that Petitioner was not interested in the plea at that time. Cheeks testified that he told Petitioner counsel would be assigned to his case for trial because Cheeks handled guilty pleas. (R.pp. 71-72). Cheeks also testified that he asked Petitioner about his involvement and if what the State said had happened had happened, and that based on Petitioner's responses he "got really busy" including going to the Solicitor's office to review the video in the case where he had the opportunity to actually see the Petitioner on the tape. (R.pp. 72, 77). Cheeks testified that he had known Petitioner for forty (40) years and could recognize him, and that he also noted some of the landmark features that he thought would help Petitioner recognize and appreciate there was actually a video of him involved in this transaction. Cheeks testified that at that point, he went back to the jail and asked the Solicitor if he could again convey the offer to Petitioner and would she withhold the service of the notice of life without parole, and she agreed to do so. (R.p. 72). Cheeks then went back to Petitioner and explained that he had reviewed the tape, that it was clearly him on the tape, that there was clearly a transaction, and described the locale, the interior of the home and other factors including trophies, plaques, and clothing, mannerisms, etc. (R.pp. 72-73). Cheeks testified that he also explained that Petitioner could not review the tape at that time because there was a confidential informant who would be compromised, and that Petitioner would have to wait until shortly before trial to view it. (R.pp. 72-73, 78-79).

Cheeks testified that Petitioner told him that he would consider the plea, and then McPherson went to see the Petitioner to go over the discovery in the case. (R.p. 73). Cheeks testified that during that meeting Petitioner indicated to McPherson that he would take the plea, and he signed the paperwork in December for the negotiated eighteen (18) years, although Petitioner wanted to



spend Christmas in the area and be available to his family so he wanted to enter the plea after Christmas. (R.pp. 73-74). However, on or about the day before his plea was to be entered, Petitioner rescinded his plea. Cheeks testified that McPherson told him that Petitioner was rescinding his plea, wanted to enter a straight up plea, and wanted Cheeks to represent him because of his association with him in the past and because Petitioner thought Cheeks would speak better on his behalf. Cheeks testified that he had no reservation about doing that and that he was glad to do it for the Petitioner. (R.p. 74). However, Cheeks testified that he never told Petitioner that if he entered the eighteen (18) year negotiated plea that he might could get him fifteen (15) years in front of Judge Hayes. (R.p. 75).

On cross examination, Cheeks testified that after viewing the tape there wasn't much need to investigate any further, nor did they detect any problems with the search warrant. (R.pp. 77-78). Cheeks also testified that Petitioner never indicated to him that he wanted to go to trial on these charges. Rather, Cheeks explained "it's quite opposite. He knew he could not go to trial on these charges." (R.p. 79). Cheeks also testified that the Solicitor's office indicated to him that Petitioner had pending charges in North Carolina, an extensive record, and that if Petitioner moved forward without taking the plea, they were going to immediately serve him with notice of life without parole. (R.p. 81).

The PCR court found that Cheeks was more credible than the Petitioner and that Cheeks presented persuasive, compelling, and credible testimony at the PCR hearing; that counsel conducted sufficient conferences with Petitioner during which counsel discussed the nature of the charges, potential penalties, Petitioner's version of the facts, possible defenses, and defense strategies; and that counsel also received all discovery material, fully investigated the case and was aware of the evidence the State would present against Petitioner at trial and discussed these matters with Petitioner.

15



The PCR court also held that Petitioner failed to provide any testimony, evidence or information he believed could have been used in his favor had counsel conducted additional conferences or investigation, and that with regard to Petitioner's allegation that his guilty plea was unknowing and involuntary, Petitioner completely lacked in credibility respecting this claim. The PCR court also held that counsel did not improperly pressure or threaten petitioner in counsel's discussion about the guilty plea; that counsel was prepared for trial and provided Petitioner with counsel's assessment of the strength of the State's case and possible outcome at trial; that counsel adequately conferred with the Petitioner, adequately sought and discussed plea options, and was thoroughly competent in his representations; and that plea counsel's conduct did not fall below the objective standard of reasonableness.

After careful review and consideration, the undersigned finds no basis in the record or the applicable caselaw to overturn the findings of the state court. Evans, 220 F.3d at 312. Petitioner has failed to show that even if his counsel had investigated more that there was any evidence which would have been uncovered to assist in his defense, and there is nothing in the record to show that any further investigations would have uncovered anything helpful to the Petitioner's defense. Moorehead v. State, 496 S.E.2d 415 (S.C. 1998)["Failure to conduct an investigation does not constitute ineffective assistance of counsel when the allegation is supported only by mere speculation as to the result."]. Petitioner has also failed to show that he was not fully apprised of his rights prior to his decision to enter his guilty plea or that his plea was not freely and voluntarily entered. To the contrary, other than his own unsupported statements, which are contradicted by the record, Petitioner has offered no evidence to show that he was not fully apprised of his situation or that any further investigation would have affected his decision to plead guilty. See Jeter v. State, 417



16

S.E.2d 594, 596 (S.C.1992)[Petitioner has burden of proof to show he was incompetent at time of plea].

The United States Supreme Court has ruled that "[r]epresentations of the Defendant, his lawyer and the prosecutor at [arraignment], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings...The subsequent presentation of conclusory allegations unsupported by specifics is subject to summary dismissal, as are contentions that in the face of the record are wholly incredible." Blackledge v. Allison, 431 U.S. 63, 73-74 (1977).  The record reflects that Petitioner affirmed to the judge at his guilty plea that he understood that he was pleading guilty to the charges, that he wanted to plead guilty, that it was his decision, that he was pleading of his own free will, and that he understood the plea.  (R.pp. 6-8). Petitioner testified that he did not want to go to trial and wanted to plead guilty, that no one had made any promises or threatened him, that he had had enough time to discuss the matter with his attorney including any defenses he may have, about the facts that were behind the indictments, and about the legal elements with which he was charged, that he was satisfied with his counsel, that he had heard all of the questions asked of him, and that he had answered the plea judge's questions truthfully. (R.pp. 6-8, 13, 17).  Statements of the accused that facially demonstrate the plea's validity are conclusive absent compelling reasons why they should not be, such as ineffective assistance of counsel. Via v. Superintendent, Powhatan Correctional Center, 643 F.2d 167, 171 (4th Cir. 1981). Petitioner has provided no evidence to show ineffective assistance of counsel in his case.  See discussion, supra.

In sum, Petitioner has not provided the Court with any evidence to show that he did not intend to plead guilty to the charges, under oath to the presiding judge, without objection in open



17

court.  Petitioner has also presented no evidence to show that counsel was ineffective for failing to

further investigate, interview the confidential informant, or insuring that Petitioner's guilty plea was

knowingly, voluntarily, and intelligently entered.  Evans, 220 F.3d at 312 [Federal habeas relief will

not be granted on a claim adjudicated on the merits by the state court unless it resulted in a decision

that was based on an unreasonable determination of the facts in light of the evidence presented in the

state court proceeding]; Williams v. Taylor, supra; Bell, 236 F.3d at 157-158; 28 U.S.C. § 2254(e)(1)

[Determination of a factual issue by the state court shall be presumed correct unless rebutted by clear

and convincing evidence]; Sargent v. Waters, 71 F.3d 158, 160 (4th Cir. 1995)[historical facts

underlying guilty pleas are entitled to deference].  The record shows that Petitioner chose to plead

guilty, and that he did so freely and voluntarily.  See Boykin v. Alabama, 395 U.S. 238 (1969); Smith,

528 F.2d at 809 [Petitioner bears the burden of proving his allegations when seeking a writ of habeas

corpus.].  Therefore, these issues are without merit and should be dismissed.

## II.

In Petitioner's second ground for relief, he contends that the South Carolina Court of

Appeals erred in dismissing his Johnson petition without ruling on the Sixth Amendment violation.

Petitioner apparently objects to the summary nature of the Appeals Court's order.  See Court Docket

No. 22-5.  However, while Petitioner attempts to argue that this alleged error is a violation of his

constitutional rights, no federal violation has been shown and Petitioner has therefore failed to show

a violation of his federal constitutional rights. See Murray v. Giarratano, 492 U.S. 1-7, 13 (1989)["A

postconviction proceeding is not part of the criminal process itself, but is instead a civil action

designed to overturn a presumptively valid criminal judgment.  Nothing in the Constitution requires

the States [ ]  to follow any particular federal model in those proceedings."] (O'Connor, J.,



concurring); see also Evans v. Smith, 220 F.3d 306, 312 (4th Cir. 2000)[Federal habeas relief will be granted with respect to claim adjudicated on the merits in state court proceedings only where such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law . . . ."].

In any event, with regard to the issues raised in Petitioner's *pro se* appellant brief in his habeas petition, the undersigned has considered these issues. Therefore, those issues were not considered procedurally barred based upon Petitioner's PCR appellate counsel filing a Johnson petition, and have been addressed on the merits.[6] See discussion, infra and supra. This claim should be dismissed.

### III.

In Ground Four of the Petition, Petitioner contends that the PCR court erred by failing to grant his continuance, while in Ground Five Petitioner contends that his PCR counsel was ineffective during the course of Petitioner's collateral attack on his guilty plea conviction and sentence, which is a denial of due process of law. These allegations concern alleged infirmities in Petitioner's state PCR proceeding, and as such are not a basis for federal habeas relief.

First, Petitioner has no claim for ineffective assistance of PCR counsel. Conduct of PCR counsel can constitute "cause" for a default of a claim under certain circumstances, but it is not itself an independent claim. See also 28 U.S.C. § 2254(i)["The ineffectiveness or incompetence of counsel during Federal or State collateral post-conviction proceedings shall not be a ground for relief in a proceeding arising under section 2254."]; Martinez v. Ryan, 565 U.S. ___, ___, 132 S.Ct. 1309,

---

[6]With regard to Ground Four, although it is not a viable federal claim, the undersigned does address the fact that, even if it was considered on the merits, Petitioner has not shown that a continuance would have provided him any relief. See discussion, infra.



1320  (2012)[acknowledging that § 2254(I) precludes [a habeas petition] from relying on the ineffectiveness of his postconviction attorney as a 'ground for relief'"](quoting <u>Holland v. Florida</u>, 130 S.Ct. 2549, 2563 (2010)); <u>Auls v. Cohen</u>, No. 11-2930, 2013 WL 496239 at *3 (D.S.C. Feb. 6, 2013)[finding allegation "PCR counsel was ineffective . . . is not a proper basis for a § 2254 petition," citing 28 U.S.C. § 2254(I)].   The Respondent is also correct that alleged infirmities in PCR proceedings do not state a basis for federal habeas relief.[7]  <u>See</u> <u>Bryant v. Maryland</u>, 848 F.2d 492, 494 (4th Cir.1988) [claims of error occurring in a state post-conviction proceeding cannot serve as a basis for federal habeas relief]; <u>Nichols v. Scott</u>, 69 F.3d 1255, 1275 (5th Cir.1995), <u>cert. denied</u>, 518 U.S. 1–22(1996)["An attack on a state habeas proceeding does not entitle the petitioner to habeas relief...."]; <u>Spradley v. Dugger</u>, 825 F.2d 1566, 1568 (11th Cir.1987) (per curiam) ["Because claim (1) goes to issues unrelated to the cause of [the] petitioner's detention, it does not state a basis for habeas relief."];  <u>Hassine v. Zimmerman</u>, 160 F.3d 941, 954 (3d Cir.1998) [errors in state post-conviction proceedings are collateral to the conviction and sentence and do not give rise to a claim for federal habeas relief].

Accordingly, Petitioner has not shown a basis for entitlement to federal habeas relief based on these issues.  <u>Wright v. Angelone</u>, 151 F.3d 151, 159 (4th Cir.1998) [alleged defects in state post-conviction procedures are not cognizable in a federal habeas corpus action]; <u>Nichols</u>, 69 F.3d

---

[7]Although the PCR court's failure to grant a continuance is not a basis for entitlement to federal habeas relief, the undersigned is constrained to note that Petitioner has not shown any potential prejudice with regard to the denial of his motion for a continuance.  Petitioner moved for a continuance because he had another PCR action pending in Greenville County at the time, and alleged that if his other convictions were vacated as a result of that proceeding it could potentially affect the sentencing on the charges in this Petition.  However, the Respondent has represented to the Court, and Petitioner has not contested, that relief was denied in his Greenville PCR proceeding and that the state Supreme Court has dismissed his appeal in that case.  <u>See</u> Respondent's Amended Memorandum in Support of Summary Judgment, p. 34.



at 1275; <u>Hassine</u>, 160 F.3d at 954.

### **Conclusion**

Based on the foregoing, it is recommended that the Respondent's motion for summary judgment be **granted**, and that this petition be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

September 5, 2014
Charleston, South Carolina

21



**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29402

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).

